*83
 
 OPINION
 

 STOVER, Justice.
 

 A judgment was entered adverse to the appellant at the conclusion of a jury trial and the trial court subsequently overruled appellant’s motion for new trial. This appeal followed.
 

 A portion of this case has been before us previously.
 
 See Lesser v. St. Elizabeth Hosp.,
 
 807 S.W.2d 657 (Tex.App.—Beaumont 1991, writ denied). This is a medical malpractice case, and Mrs. Lesser originally filed suit against St. Elizabeth Hospital, Dr. Thomas Pugh, Dr. J.A. Allums, and Dr. Eugene Bebeau, Jr. on November 2,1987, alleging negligence in the treatment of her husband, Frank Lesser. Mrs. Lesser non-suited two of the doctors and St. Elizabeth Hospital and Dr. Allums filed motions for summary judgment. The trial court granted the hospital’s motion, denied Dr. Allums’ motion and severed the actions. The granting of the hospital’s motion for summary judgment was the subject matter of the prior litigation. On December 13,1993, a jury trial began in this remaining action against Dr. Allums. The jury found no negligence on the part of Dr. Allums and the trial court entered a take-nothing judgment against Mrs. Lesser.
 
 [1]
 

 By way of background, Frank Edward Lesser was admitted to St. Elizabeth Hospital on or about August 21, 1985. He had been having difficulty in walking and pain in his legs, and his physician in Woodville referred him to Dr. Allums. Dr. Allums then had Mr. Lesser admitted to the hospital in order that an arteriogram be performed in an attempt to determine the cause of the problems. Dr. Thomas Pugh performed the procedure. During the arteriogram, Mr. Lesser suffered a stroke and Dr. Pugh took the necessary remedial procedures. Dr. Pugh gave orders that Mr. Lesser was to be monitored every fifteen minutes. At some point in time Mr. Lesser suffered a second stroke. Further medical problems occurred, and as a result Mr. Lesser became completely paralyzed on his right side, could not speak, was totally disoriented, and was vision and hearing impaired. Mr. Lesser required twenty-four hour attendant health care.
 

 Appellant has perfected her appeal and brings forth two points of error.
 

 In the first point of error, appellant alleges that the trial court erred because it denied plaintiffs Motion for New Trial on the grounds of judicial estoppel.
 

 The decision on a motion for new trial is committed to the sound discretion of the trial court.
 
 Balias v. Balias, Inc.,
 
 748 S.W.2d 253, 257 (Tex.App.—Houston [14th Dist.] 1988, writ denied). A trial judge’s denial of a motion for new trial cannot be disturbed on appeal unless appellant can establish a clear abuse of the trial court’s discretion.
 
 Parker v. Miller,
 
 860 S.W.2d 452, 458 (Tex.App.—Houston [1st Dist.] 1993, no writ);
 
 Balias,
 
 748 S.W.2d at 257. The test for abuse of discretion is not whether, in the opinion of the reviewing court, the trial court could have granted a new trial. Rather, it is a question of whether the court acted without reference to guiding rules and principles.
 
 Downer v. Aquamarine Operators, Inc.,
 
 701 S.W.2d 238, 241-42 (Tex.1985),
 
 cert. denied,
 
 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). The mere fact that a trial judge may decide a matter within his discretionary au
 
 *84
 
 thority in a manner different than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred.
 
 Beaumont Bank, N.A. v. Buller,
 
 806 S.W.2d 223, 226 (Tex.1991);
 
 Downer,
 
 701 S.W.2d at 242. Appellant has not shown that the trial court acted without reference to any guiding rules and principles or that the denial of her motion for new trial was arbitrary or unreasonable. Accordingly, point of error one is overruled.
 

 Appellant argues that our court should grant the plaintiff a new trial because appellee, Dr. Allums, allegedly swore to an affidavit offered in support of a motion for summary judgment of St. Elizabeth Hospital. Appellant asserts the doctrine of judicial es-toppel as the basis for granting a new trial. Appellant argues that Dr. Allums’ statements in testimony at trial and those contained in the affidavit are inconsistent and automatically sanction should be imposed and a new trial granted. By his affidavit, which was based on his review of the hospital and medical records in 1989, Dr. Allums took the position that the hospital was not negligent in its care of Mr. Lesser. Some of the confusion in this case results from the fact that there is no prohibition under law from a co-defendant giving an affidavit exonerating a co-defendant from liability.
 

 At trial, Mr. Lesser’s daughter testified concerning a lack of care of the hospital in that no one had cheeked on her father for over two hours after returning from the aborted arteriogram. The Nursing Narrative Records introduced into evidence reveal no entry on the records from 1330 (1:30 p.m.) until 1545 and 1550 (3:45 p.m. — 3:50 p.m.).
 

 In his affidavit in support of St. Elizabeth’s motion for summary judgment, Dr. Allums stated:
 

 In particular, St. Elizabeth Hospital was properly equipped and staffed with competent nurses, employees, and agents from August 21, 1985 to September 13, 1985. All of the health care services provided to Mr. Lesser met or exceeded the appropriate standard of care required of a hospital in 1985.
 

 [[Image here]]
 

 It is my expert opinion that each aspect of the care and treatment provided by St. Elizabeth Hospital to Frank Lesser, its agents, servants and employees before, during, and after surgery met or exceeded the appropriate standard of care in 1985. Further, it is my expert opinion that the care and treatment that was rendered to Mr. Lesser by St. Elizabeth Hospital, its agents, servants, and employees before, during, or after surgery was the same care and treatment that would have been rendered by other hospitals acting in the same or similar circumstances.
 

 It is also my expert opinion, based upon a reasonable degree of medical probability, that no act or omission on the part of St. Elizabeth Hospital, its agents, servants, or employees before, during, or after surgery caused any damage or injury to Mr. Lesser. In addition, no equipment owned or operated by St. Elizabeth Hospital caused any damage or injury to Mr. Lesser. Further, it is my expert opinion that the damages plaintiffs now complain of in their most recent petition were in no way caused by any aspect of care and treatment rendered by St. Elizabeth Hospital, its agents, servants, or employees.
 

 Appellant called appellee Dr. J.A Allums at trial and elicited the following testimony on direct examination:
 

 Q. [Mr. Bates, attorney for appellants] Doctor, one thing I need to know for certain. Do you have any criticism whatsoever of the way the nurses handled the situation in not calling you?
 

 A. As I listened to the testimony today, I don’t know that I can. You know, I — if they order vital signs every 15 minutes and the Lesser family says they weren’t in there, yes, I’m critical of that. Apparently someone said that it was a sudden change about three o’clock, if I heard the testimony correctly. I wasn’t notified of that. I don’t think anybody, you know, the nursing service or anyone else was aware that he was paralyzed until I walked in the room at 3:45.
 

 Appellant made no objection based on judicial estoppel to Dr. Allums’ response, nor did appellant ask that the testimony be stricken or that a mistrial be granted, but appellant
 
 *85
 
 continued as we construe in wily examination for impeachment purposes in an attack upon the credibility of Dr. Allums by eliciting proof of an inconsistent statement.
 

 The doctrine of judicial estoppel or estop-pel by oath was enunciated in Texas in
 
 Long v. Knox,
 
 155 Tex. 581, 291 S.W.2d 292 (1956). In a prior proceeding to restrain execution by a creditor, Knox swore that certain property was the separate property of his wife. Because of this oath, the creditor discontinued prosecution of the suit. After Knox’s death, his daughter brought an action asserting that the property was community property rather than the separate property of the wife. The court held that the truth of the assertion that the property was the separate property of the wife was conclusively established by the prior sworn pleadings and that Knox’s daughter was precluded by the doctrine of judicial estoppel from later making an assertion to the contrary.
 

 Estoppel by oath, or judicial estop-pel, was adopted by the Supreme Court in
 
 Long v. Knox,
 
 based upon the public policy of upholding the sanctity of oath. Public policy discourages false oaths, and the doctrine is based on considerations of justice and public policy and is designed to protect the sanctity of oath. Estoppel by oath, or judicial estoppel, has its origin in the laws of Tennessee.
 
 Vendig v. Traylor,
 
 604 S.W.2d 424 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). Under the law of Tennessee, an inconsistency by implication does not invoke the doctrine of judicial estoppel.
 

 That doctrine founded on contradictory statements under oath is well settled in this state and will be unhesitatingly applied in a proper case, but as we have heretofore had occasion to note, we are not disposed to extend it. It can never find application unless there has been what is equivalent to a specific and categorical denial of that which has been affirmed, unaccompanied by any reasonable explanation of the discrepancy, and unless it appears that the previous statement was not only untrue but was wilfully false in the sense of conscious and deliberate perjury.
 

 Monroe County Motor Co. v. Tennessee Odin Insurance Co.,
 
 38 Tenn.App. 223, 231 S.W.2d 386, 393 (1950).
 

 Inasmuch as the doctrine of judicial estoppel originated and developed in the courts of Tennessee, it is to the cases of Tennessee that we may look for application of the principle. The essence of the doctrine of judicial estoppel is that a party will not be allowed to contradict in a later proceeding a statement he has made under oath in the course of a previous proceeding, or earlier in the same proceeding. However, the latter statement must amount to a categorical denial of the earlier. It is the burden of the one attempting to show that there were excusing circumstances to show that the earlier statement was made by mistake or accident, or through fraud or duress, or by any degree of negligence short of willful lying. The Tennessee courts have held that opinions of law will not give rise to judicial estoppel. In some cases the courts have stated that judicial estoppel will arise only from statements of fact and not from statements of opinion.
 
 Schultz, Baujan & Co. v. Bell,
 
 23 Tenn.App. 258, 130 S.W.2d 149 (1939). Although opinions have been loose and in confusing language at times, they apply the doctrine in conformity with its basic idea that when a person willfully swears under oath to one thing in an attempt to gain an advantage, he will not be allowed subsequently to maintain an inconsistent position.
 

 The doctrine of judicial estoppel requires success by the party sought to be estopped in the first proceeding and then an inconsistent position in a subsequent proceeding. Dr. Allums did not succeed at all but failed in the summary judgment proceeding that was granted to St. Elizabeth Hospital. Dr. Allums filed a joint motion for summary judgment along with St. Elizabeth Hospital. Dr. Allums’ motion was denied and St. Elizabeth Hospital’s was granted, appealed, affirmed, and writ denied. Dr. Allums was in no way successful based on the alleged inconsistent affidavit.
 

 Appellant also argues that the jury heard contradictory testimony which resulted in prejudice to the administration of justice and that the only way to overcome that prejudice is to sanction Dr. Allums by granting a new trial. As we have previously observed, it is often true, if not always, that in the trial of a case, the jury must consider contradictory
 
 *86
 
 and conflicting testimony. In fact, it is the exclusive province of the jury to consider all of the conflicting factual testimony, weigh it in the balances and decide which “facts” are true.
 
 Bellefonte Underwriters Ins. Co. v. Brown,
 
 704 S.W.2d 742 (Tex.1986). The jury heard extensive examination and cross examination of Dr. Allums about the affidavit. The jury had before it the nurses’ narratives and further heard the testimony of Mrs. Lesser and her daughters that the hospital nurses did not monitor Mr. Lesser. It is obvious that the jury either disregarded the discrepancy as unimportant, or resolved the conflicting testimony in favor of Dr. Allums.
 

 What we have is an inconsistent statement of a witness which was presented to the jury for impeachment purposes. The contradictory testimony was elicited by appellant, obviously for the purposes of impeachment of Dr. Allums’ credibility before the jury. In this lawsuit, at no time did Dr. Allums plead or offer proof that the negligence of St. Elizabeth caused the injury, nor did he testify that St. Elizabeth proximately caused the injury to Mr. Lesser. In his testimony he stated that he did not think anyone was negligent. If such position was taken by Dr. Allums, the affidavit could have been brought forward by the appellant and upon such evidence being produced, a proper motion or objection by appellant should have been sustained and Dr. Allums would not have been permitted to take advantage of a position in the original case that St. Elizabeth was not at fault and by now coming forward taking another position that they were. Judicial estoppel would be invoked. In the instant case, the testimony at best was elicited as a trial tactic for the purposes of impeachment and to attack Dr. Allums’ credibility before the jury.
 

 Finding no abuse in the trial court’s refusal to grant a new trial, point of error one is overruled.
 

 Informed Consent
 

 Appellant urges her second point of error, stating “[t]he trial court erred in failing to apply the doctrine of informed consent with respect to disclosure to the patient of a no-risk procedure.”
 

 Appellant had, prior to trial, presented a motion in limine that prohibited:
 

 Any reference that Mr. Lesser was aware of the risks of arterirography [sic] or that medical persons explained such risks to him since informed consent will not be an issue in this case and introduction of “informed consent” evidence by the defendant would confuse the jury on issues of negligence.
 

 The trial court sustained the appellant’s motion in limine and no evidence was offered on the issue of informed consent. However, appellant did offer into evidence on informed consent, via a bill of exceptions, the testimony of appellant’s expert, Dr. Mitchell Mills. At the conclusion of the evidence, appellant tendered a jury question, with definitions, on the issue of informed consent, which the court refused.
 

 Appellant sought to exclude the evidence on informed consent with her motion in li-mine and now complains on appeal that the trial court erred when it would not allow evidence or a jury submission on informed consent.
 

 Appellant’s motion in limine stated that informed consent was not relevant to any issue in the case and would confuse the jury on the issue of negligence. The trial court sustained appellant’s motion in limine and the jury heard no evidence on informed consent. Appellant asks this court to grant a new trial because the jury did not consider informed consent.
 

 Appellant urges that the trial court ruled that a cause of action based on failure to disclose alternative methods of diagnosis and procedure “does not exist.” The record does not reveal a ruling by the trial court that a cause of action based on alternative procedures does not exist. Nor is there a ruling that failure to advise a patient on alternative procedures does not support a cause of action.
 

 Appellant had developed the “alternative procedures” theory of liability. In fact, the jury heard considerable evidence that Dr. Allums could have performed a “doppler ultrasound” or “duplex scan” rather than an arteriogram. Evidence on alternative procedures as negligence was before the jury for consideration as to whether or not Dr. Al-
 
 *87
 
 lums was negligent for doing an arteriogram when he could have done the non-invasive doppler ultrasound and/or a duplex scan could have been performed.
 

 The trial court did not make any rulings prohibiting introduction of “alternative procedures” evidence, as is shown by the numerous references in the statement of facts to alternative procedures such as doppler x-rays and duplex scans. Following the presentation of this “alternative procedure” evidence, the jury still determined that Dr. Allums was not negligent in his treatment of Mr. Lesser.
 

 Dr. Allums testified unequivocally that he would have ordered the arteriogram even if the doppler ultrasound had shown that Mr. Lesser had a high grade stenosis (which Mr. Lesser did have and which would have shown up on the doppler ultrasound). Even if Dr. Allums had advised Mr. Lesser of the availability of the doppler ultrasound and Mr. Lesser chose the doppler ultrasound, Dr. Al-lums’ unrebutted testimony shows that the arteriogram would have been performed anyway because of the reliability of the arterio-gram over the doppler ultrasound. Thus, the arteriogram may have caused Mr. Lesser’s stroke, however, it would have been performed regardless of what a doppler ultrasound may have shown. Dr. Mills, appellant’s expert, admitted that an arteriogram may be an appropriate final pre-operative procedure after a duplex scan had been performed.
 

 Here the trial court submitted a general negligence question. We find that the trial court was within its discretion in refusing to submit an issue on informed consent. The trial court has discretion to submit negligence questions broadly.
 
 Brown v. Armstrong,
 
 713 S.W.2d 725 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). We, therefore, overrule appellant’s point of error number two. Accordingly, the judgment below is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . QUESTION NO. 1
 

 Do you find that the negligence, if any, of Dr. J.A. Allums, proximately caused injury or damage, if any to Frank Lesser?
 

 Answer "Yes” or “No”.
 

 ANSWER: NO
 

 "NEGLIGENCE", with reference to the conduct of Dr. J.A. Allums, means the failure to use ordinary care; that is, the failure to do that which an vascular surgeon of ordinary prudence would have done under the same or similar circumstances or doing that which an vascular surgeon of ordinary prudence would not have done under the same or similar circumstances.
 

 "ORDINARY CARE” means that degree of care that an vascular surgeon of ordinary prudence would use under the same or similar circumstances.
 

 "PROXIMATE CAUSE” is a cause which, in a natural and continued sequence, unbroken by any new and independent cause, produces an event, and without which, the event would not have occurred; and in order to constitute proximate cause, the act or omission must be such that one exercising ordinary care, according to the applicable definition thereof, would anticipate or foresee the particular event complained of, or some similar event which might probably result therefrom. There may be more than one proximate cause of an event.