**Robyn Marie GRAY, Appellant,**

v.

**Terry Wayne GRAY, Appellee.**

No. 09–97–079CV.

Court of Appeals of Texas,
Beaumont.

Submitted June 25, 1998.
Decided July 30, 1998.

 

Pamela E. George, Houston, for appellant.

Jimmie P. Price, Price & Price, Conroe, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

### OPINION

WALKER, Chief Justice.

This is an appeal from an order by the trial court modifying a portion of a prior divorce decree in which the parties, Terry Gray (appellee) and Robyn Gray (appellant) were named joint managing conservators of their only child, Amanda. In the agreed decree, which took effect in September of 1992, Robyn was permitted to establish Amanda's domicile, and Terry was permitted a greater amount of visitation time (from ten to eleven days per month) than provided for in the Family Code's standard possession order. *See* TEX. FAM.CODE ANN. §§ 153.311–153.317 (Vernon 1996).[1] In the modification lawsuit, trial was to the court. Both parties testified as well as family and friends familiar with the parties' respective lifestyles and parenting skills. Terry also introduced testimony from a psychologist.

Written Findings of fact were filed in which the trial court found that the circumstances of Amanda, Terry, and Robyn had materially and substantially changed since the entry of the 1992 divorce decree; that said decree had become unworkable and inappropriate under the existing circumstances; and that modification of the 1992 decree with regard to access to Amanda by

Terry and Robyn, was in Amanda's best interest. The trial court's written order provided that Terry be awarded possession of Amanda the first fifteen days of each month, and that Robyn be awarded Amanda for the remaining fifteen (or sixteen) days of the month. Neither party designated primary domiciliary for Amanda. Support payments, which had originally been set at $275 in the 1992 decree, were to continue to be paid to Robyn in the same amount.

On appeal, Robyn presents fourteen appellate issues for our consideration. With the exception of two issues (twelve and fourteen) grounded on procedural improprieties by the trial court, Robyn's basic complaint is with the alleged lack of legally and factually sufficient evidence to sustain the trial court's modification decision, and the evidentiary sufficiency of certain findings of fact by the trial court. Robyn also couches several issues in terms of "abuse of discretion" by the trial court in its modification decision. We note at the outset that Robyn has couched her no evidence/insufficient evidence issues in the wrong appellate context. An appeal from a trial court's decision to modify a decree or order regarding joint conservatorship involves an abuse of discretion standard. *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin 1997, no writ). Under an abuse of discretion standard, legal and factual insufficiency are *not* independent grounds for asserting error but are, on the other hand, relevant factors in assessing whether the trial court abused its discretion. *Id.; D.R. v. J.A.R.*, 894 S.W.2d 91, 95 (Tex.App.—Fort Worth 1995, writ denied); *Mai v. Mai*, 853 S.W.2d 615, 618 (Tex.App.—Houston [1st Dist.] 1993, no writ). Therefore, issues two, four, six, nine, and thirteen are overruled. We will apply the abuse of discretion standard to points of error one, three, five, seven, eight, ten, eleven, twelve, and fourteen.

The parties initially claim separate provisions of the Family Code apply to Terry's burden of proof at trial. The parties request that we select one in order to properly mea-

---

1. Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 152–54, *amended by* Act of April 3, 1997, 75th Leg., R.S., ch. 9, 1997 Tex. Gen. Laws 44 and Act of May 24, 1997, 75th Leg., R.S., ch. 802, 1997 Tex. Gen. Laws 2630.

sure whether the trial court abused its discretion. Robyn relies on § 156.202, which reads as follows:

The court may modify the terms and conditions of a joint conservatorship order if:

(1)(A) the circumstances of the child or of one or both of the joint managing conservators have materially and substantially changed since the rendition of the order; or

(B) the order has become unworkable or inappropriate under existing circumstances; and

(2) a modification of the terms and conditions of the order would be a positive improvement for and in the best interest of the child.

TEX. FAM.CODE ANN. § 156.202 (Vernon 1996).

Terry, on the other hand, points to § 156.301 as the correct Family Code section. It reads, in pertinent part, as follows:

The court may modify an order that sets the terms and conditions for possession of or access to a child or that prescribes the relative rights, privileges, duties, and powers of conservators if:

(1) the circumstances of the child or a person affected by the order have materially and substantially changed since the date of the rendition of the order; [or]

(2) the order has become unworkable or inappropriate under existing circumstances[.]

TEX. FAM.CODE ANN. § 156.301 (Vernon 1996).

The facial distinction is that § 156.202 contains language requiring an additional finding by the trial court that the modifications of an existing joint managing conservatorship order "be a positive improvement for and in the best interest of the child." This Court, as well as both parties, recognize "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002 (Vernon 1996); *Farish v. Farish*, 921 S.W.2d 538, 541 (Tex.App.—

Beaumont 1996, no writ). We see no substantive distinction, and the parties have not provided us with any, between the additional language contained in § 156.202, and the language of § 153.002 which must guide any trial court regarding issues of conservatorship and possession of a child. Nevertheless, we will, for the sake of this appeal, look to the language in § 156.202 in our review of the record for abuse of discretion.

As we alluded to above, we review the trial court's modification of the joint conservatorship portion of the 1992 decree under an abuse of discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982); *Doyle*, 955 S.W.2d at 479. A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or when it acts without reference to any guiding principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate justice in a similar circumstance does not demonstrate that an abuse of discretion occurred. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–242 (Tex.1985). An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978); *Valdez v. Valdez*, 930 S.W.2d 725, 731 (Tex. App.—Houston [1st Dist.] 1996, no writ). Furthermore, an abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Id.; Holley v. Holley*, 864 S.W.2d 703, 706 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

■ In the instant case, we simply cannot say the trial court abused its discretion in essentially splitting in half possession of Amanda by Terry and Robyn. Evidence was abundant that substantial and material changes had taken place in the lives of Terry, Robyn, and Amanda since the divorce decree took effect in 1992. Amanda's life probably changed the most as she was not in school in 1992, and the record indicated that at the time of trial, she either was or had recently been involved in a variety of extracurricular activities. This evidence was not only indica-

tive of change in circumstances, but also proved how woefully inadequate the 1992 decree had become. The severe need for a new and more highly structured order was also shown, sadly, from the level of acrimony and open hostility into which both parties had admittedly descended in the course of exercising their rights and duties as to Amanda.

Testimony indicated that both parties were extremely caring, loving, nurturing parents, and that Amanda was a delightful, "very well-adjusted, very bright child." The testimony also indicated that, on occasion, both parties engaged in poor judgment with regard to Amanda's health and well-being to a greater or lesser degree. This makes neither parent saint nor sinner, merely human. The parents lived about eight miles from each other and apparently within the same school district. The testimony from Terry and his witnesses indicated that, because his employer permitted him to work at home while reducing his work-related travel to one brief trip per year, Terry was able to virtually structure his daily life almost entirely around Amanda and her particular needs. Robyn's testimony indicated that she was employed outside the home and was engaged in a business enterprise operated by her and her husband from their home. From the face of the evidence presented, it appears that with Terry, Amanda would have a "full-time" parent in the sense that she would have access to a parent at all times when she was not at school. Even when she was attending school, the testimony indicated that Terry was routinely at the school eating lunch with Amanda, or volunteering his time in the library. Also from the face of the evidence presented, it appears that with Robyn, Amanda would experience what most children probably face on a daily basis— namely, parents who work outside the home. The testimony further indicated that Robyn had some responsibility for two other children, her husband's son and daughter. On balance, the evidence, on its face, appears to indicate that Terry could provide Amanda with quite a bit more undivided attention than could Robyn. The testimony from Terry's psychologist, John Carley, indicated that Terry appeared to be "a normal, stable, okay dad." The following exchange then took place between Terry's trial counsel and Dr. Carley:

Q. Is there any problem that you see with respect to if Judge Martin in his belief believes that Terry should be the primary custodial parent of Amanda, do you see anything in the testing or interview process that would indicate to you that we need to stop that appointment or hold up on it or that that would not be in Amanda's best interests?

A. No.

. . . .

Q. In your interview with Amanda, did you learn from that interview whether or not she has specific desires and/or opinions relative to spending time with her father?

A. Yes. She in general— her comments were that, of course, like most kids of that age still do, you know, her preference would be for everybody to be back together so she could have one home and this wouldn't be an issue. That— even though there wasn't a diagnosable, nothing that I saw really she was having in terms of a D.S.M. code, or diagnostic code, to give her a label, the only area that, which I thought she was experiencing some stress, like most kids, was, you know, kind of wishes she didn't have to be involved in this conflict and that she would like it to be resolved and she wanted to spend half the time with her mom and half the time with her dad.

Under the appellate standard for reviewing a trial court's modification order for abuse of discretion, the trial court, based upon the state of the record before us, was well within its discretion to divide access to Amanda between the parents. After hearing all of the testimony, some of it reflecting the very bitter and spiteful state of affairs between Terry and Robyn, the trial court announced its decision, and then concluded the trial with the following rather sagacious comments:

And what I hope to effect here is that Mom has this child for 15 or 16 days most months without any intervention from you [Terry].

And you have the first 15 days without any intervention from her. And y'all honor her schedule, whatever you have, whatever you have her in, as to the regular activities.

If during the next six months or nine months or a year you think this is not working, you are free to carry the child, you know, to the psychiatrist or psychologist or one of these other doctors that's been here, whatever, and to prove this to me that it is harmful to the child. Okay? I could be, but—

Ms. [Gray]: If it could be, how can you—

THE COURT: Pardon?

Ms. [Gray]: Nothing. If it could be harmful to her, how could you do it?

THE COURT: I don't think it will be harmful to her.

Ms. [Gray]: What we're doing right now is not harmful? She's a happy child.

THE COURT: But y'all are not happy. You can't get along. If I give you 15 days and him 15 days—

Ms. [Gray]: It is going to split her in half.

THE COURT: Well, sure it will. Sure it will. But I don't think there will be any detrimental effect to it. But I don't have a crystal ball. If it does, it does; and y'all are welcome to petition the Court back to me and prove me wrong and I'll certainly do that.

. . . .

And let me tell you this: If y'all decide that you can cooperate now with one another without all the bickering and the hollering and the screaming and the cussing and all of that and the phone calls, if y'all decide that you can somehow now get along because of my ruling, I don't care what y'all agree to, as long as it is okay with your lawyers and within the reason, the realm of reason under the Family Code. Okay?

We find no abuse of discretion in the trial court's modification of the 1992 decree as set out in its order of December 2, 1996. Appellant's issues one, three, five,[2] seven, eight, ten, and eleven are overruled.

■ Issue twelve presents the procedural complaint of the trial court's failure to "make the statutorily required findings of fact." In support of this position, Robyn relies on § 153.258 of the Family Code, which states, in pertinent part, that "in all cases in which possession of a child by a parent is contested and the possession of the child varies from the standard possession order, . . . the court shall state in the order the specific reasons for the variance from the standard order." Initially, we note in Robyn's brief some confusion between the requirements of § 153.258 and a request for findings of fact and conclusions of law under the Texas Rules of Civil Procedure. As we appreciate the language of § 153.258, the trial court is directed to include, *in the modification order itself,* its reasons for deviating from standard possession order language. In the instant case, written findings of fact are indeed present in the record before us, albeit not in the order itself. Additionally, as set out above, the trial judge provided the parties with a lengthy verbal explanation for ruling as he did. While we have found no authority directly on point, we find the analysis of a failure by a trial court to make findings of fact, when timely requested, to be reasonably analogous. The Court's discussion in *Martinez v. Molinar,* 953 S.W.2d 399, 400–401 (Tex.App.—El Paso 1997, no writ) is helpful, and we quote from it as follows:

> As a general rule, the failure of the trial court to file findings of fact constitutes error where the complaining party has complied with the requisite rules to preserve error. *Wagner v. Riske,* 142 Tex. 337, 342, 178 S.W.2d 117, 119 (1944); *FDIC v. Morris,* 782 S.W.2d 521, 523 (Tex. App.—Dallas 1989, no writ). There is a presumption of harmful error unless the

---

**2.** Needless to say, our holding of no abuse of discretion by the trial court naturally implies that the evidence contained in the record before us rebutted the presumption that the standard possession order was reasonable and was in the

child's best interest. *See* Tex. Fam Code Ann. § 153.252 (Vernon 1996); *In Interest of Doe,* 917 S.W.2d 139 (Tex.App.—Amarillo 1996, writ denied).

contrary appears on the face of the record. *City of Los Fresnos v. Gonzalez,* 830 S.W.2d 627 (Tex.App.—Corpus Christi 1992, no writ). Thus, the failure to make findings does not compel reversal if the record before the appellate court affirmatively demonstrates that the complaining party suffered no harm. *Las Vegas Pecan & Cattle Co. v. Zavala County,* 682 S.W.2d 254, 256 (Tex.1984). Where there is only one theory of recovery or defense pleaded or raised by the evidence, there is no demonstration of injury. [citations omitted] *Accord, Landbase, Inc. v. Texas Employ., Com.,* 885 S.W.2d 499, 501–02 (Tex.App.—San Antonio 1994, writ denied)(failure to file findings and conclusions harmless where the basis for the court's ruling was apparent from the record).

The test for determining whether the complainant has suffered harm is whether the circumstances of the case would require an appellant to guess the reason or reasons that the judge has ruled against it. *Sheldon Pollack Corp. v. Pioneer Concrete,* 765 S.W.2d 843, 845 (Tex.App.—Dallas 1989, writ denied); *Fraser v. Goldberg,* 552 S.W.2d 592, 594 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.).

In the instant case, while the issues of change in circumstances and unworkableness of the prior decree were issues, neither party can seriously question the fact that these issues were proven by a substantial amount of testimony. The key issue at trial, and apparently on appeal, is the proof, or lack thereof, of the best interest/positive improvement issue. As the trial court explained to the parties at the conclusion of the testimony, he was fashioning an order that equalized access to Amanda and was detailed and specific in hopes of minimizing the overt displays of animosity between the parties whether in Amanda's presence or on other Amanda-related occasions. The trial court's intent on reducing the need for direct contact between the parties was overtly apparent. Possession exchanges were reduced to two per month, parent-initiated phone contact with Amanda was prohibited entirely, and full and identical rights and privileges were established for each parent so as to eliminate any attempts at "one-upmanship" on the part of either parent. We find, therefore, that the written findings and the verbal explanation combined to eliminate any "guessing game" on the part of either party with regard to reasons for deviating from the standard possession order. Any error in not specifying said reasons in the modification order itself is entirely harmless. *See* Tex. R.App. P. 81(b)(1). Issue twelve is overruled.

■ Issue fourteen complains of trial court error in denying Robyn's special exceptions and in failing to allow a bill of exceptions to be fully presented on "newly discovered evidence." Said special exceptions were filed prior to trial and, Robyn contends, because of said denial, "Robyn was unaware that Terry wanted to have Amanda's time evenly split." Robyn further contends that when the trial court made the "50/50 split" a reality, a new trial based upon "newly discovered evidence" was in order. The affidavits accompanying the written motion for new trial set out the following as the reasoning behind said motion:

> The possibility of an approximate 50/50 split of Amanda's time, being shuttled back and forth between my home and TERRY's home was never raised until the judge announced that such was his decision. If I had been in any way forewarned that the modification action could have culminated in such an order, I certainly would have sought expert witnesses to establish the effect such shuttling back and forth has upon children generally and what such shuttling would have on our child, AMANDA, in particular.

The record before us reflects that on page 6 of Terry's first amended motion to modify, a proposed modified order contains language permitting Terry to establish Amanda's legal residence and domicile. This certainly put Robyn on notice that Terry envisioned a major shift in his access to and possession of Amanda. Also contained in the reporter's record before us are the opening remarks of Terry's trial counsel, *prior to the presentation of any evidence to the trial court.* During these remarks, trial counsel proffered for the trial court's consideration two alternative possession plans. The first was to grant

Terry the right to establish Amanda's residence and domicile with him and place Robyn under the standard possession guidelines for a joint managing conservator. Trial counsel then proposed the second alternative in the following way:

Alternatively, we believe that the decree should be modified to provide for equal time. And I believe the evidence would show that that would be something that the Court should give strong consideration to. That is, that the Court would consider one week with one parent, one week with the other parent. We believe that the better choice would be two weeks with one parent, two weeks with the other parent, with time in between on each week for, for instance, Wednesday evening when school is out, 3:00 P.M., or something along those lines, until the beginning of school the next morning when school would begin.

This proposed option was met by silence from Robyn. There was no request for a continuance from the trial court so that a psychological expert could be enlisted to show the potential detrimental effect that split time would have on Amanda, nor was there a request to the trial court to withhold its ruling until such evidence (live testimony, deposition, affidavit, etc.) could be produced for the trial court's benefit as to detrimental effect. We, therefore, are particularly unpersuaded by the attempt to characterize the testimony presented at the motion for new trial hearing as "newly discovered evidence." We also find no abuse of discretion in the trial court's refusal to grant Robyn a new trial based solely on this allegedly newly discovered evidence. *See* TEX.R. CIV. P. 320; *Lesser v. Allums,* 918 S.W.2d 81, 83–84 (Tex. App.—Beaumont 1996, no writ).

 With regard to the trial court's having ordered a halt to Robyn's bill of exception testimony from her psychological expert,

Dr. Kitt Harrison, during the motion for new trial hearing, the general rule is that a trial court must permit a party to make an informal bill of exceptions. *4M Linen and Uniform Supply Co. v. W.P. Ballard and Co.,* 793 S.W.2d 320, 324 (Tex.App.—Houston [1st Dist.] 1990, writ denied). The obvious purpose behind a bill of exceptions is to put the evidence in the record so that the appellate court can determine if the trial court erred in excluding it or erred in ruling in some way materially related to the evidence. In *Pennington v. Brock,* 841 S.W.2d 127, 131 (Tex. App.—Houston [14th Dist.] 1992, no writ), it was observed that when a record is sufficient to apprise both the trial court and the appellate court of the nature of the evidence expected to be elicited, any error in refusing to allow a bill of exceptions is harmless. In *Pennington,* the trial court allowed the plaintiff to present a forty-five minute bill on the issue of unsanitary hospital conditions. As in the instant case, the trial court in *Pennington* stopped the plaintiff from taking any more time with the bill. As was the situation in *Pennington,* the ten pages of testimony from Dr. Harrison that appear in the reporter's record before us do not support Robyn's motion for new trial in that the testimony does not contain newly discovered evidence. Any error in the trial court's failure to permit Robyn to complete her bill of exceptions is harmless. TEX.R.APP. P. 81(b)(1). Issue fourteen is overruled; the trial court's modification order is affirmed.

AFFIRMED.