

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00011-CV

**IN THE INTEREST OF A.V.** and A.V., Children

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CI-17414
Honorable Gloria Saldaña, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Karen Angelini, Justice
               Jason Pulliam, Justice

Delivered and Filed:  October 28, 2015

AFFIRMED

Appellant Maria Estrada and appellee Luis Valdivia were divorced in 2006. They are the

parents of two children. In 2009, agreed orders were entered, naming both parents joint managing

conservators, and granting Maria the exclusive right to designate their children's primary

residence. Later, Luis filed a petition seeking to modify the prior order and to be appointed the

person with the right to designate the children's primary residence. After hearing three days of

testimony, a jury found the prior order should be modified to designate Luis as the conservator

with the exclusive right to designate the children's primary residence. On appeal, Maria contends:

(1) the trial court abused its discretion in admitting certain evidence; (2) the evidence is legally

and factually insufficient to support the jury's finding; and (3) the trial court's refusal to enter

findings of fact and conclusions of law precludes her from making an adequate presentation on

appeal regarding the trial court's deviation from the extended standard possession order. We affirm the trial court's order.

## BACKGROUND

At the time of their divorce in 2006, Maria and Luis only had one son, who was born on October 24, 2000. Throughout the next several years, Maria and Luis would reunite and separate. During one period in which the couple was reunited, they had a second son, who was born on September 16, 2008. After another separation in 2009, the agreed orders Luis sought to have modified in the current case were entered, granting Maria the exclusive right to designate the children's primary residence. After 2009, Maria and Luis again went through periods of time during which they would reunite and separate until 2012, when Maria met her current husband.

In September of 2012, Luis filed a petition to modify the 2009 orders initially only as to the older son. In January of 2013, Maria filed a motion for the preparation of a social study, and in May of 2013, the trial court signed an order appointing Jeffrey Blair as the investigator to prepare a social study evaluating the homes of Luis and Maria and the circumstances and conditions of only their older son. The social study report was completed and filed with the trial court on August 30, 2013. In the report, the investigator did not recommend any changes to the custody arrangement; however, given that the older son expressed his preference to live with Luis, the investigator believed due consideration should be given if circumstances changed that would require the older son to attend a different school or be separated from his younger brother.

In September of 2013, Luis filed an amended petition seeking to modify the prior orders as to both children. In October of 2013, the trial court entered a supplemental order appointing Blair to investigate the homes of Luis and Maria and the circumstances and conditions of both children. The social study report was completed and filed with the trial court on December 3, 2013. The investigator again recommended that the children remain together attending the same

schools and interacting with the same friends. If Maria moved away from San Antonio, the investigator recommended that the children remain with Luis.

In June of 2014, Luis discovered Maria and her new husband had moved miles away and planned to enroll the children in new schools. In August of 2014, the trial court entered an order requiring the children to remain enrolled in the same schools they previously attended in the Southwest Independent School District; however, Maria filed an original mandamus proceeding in this court, and this court stayed the trial court's order, thereby allowing the children to remain enrolled in the new schools pending trial. The parties proceeded to trial in September of 2014. As previously noted, the jury found the 2009 order should be modified to designate Luis as the conservator with the exclusive right to designate the children's primary residence.

On October 6, 2014, the trial court held a hearing on post-trial motions. At the hearing, Maria requested more possession than the alternate extended possession provided by section 153.317 of the Texas Family Code. After the hearing, Maria filed: (1) a written request for alternate extended possession pursuant to section 153.317; and (2) a written request pursuant to section 153.258 of the Code, requesting the trial court to state in the possession order the specific reasons for all deviations from the standard possession order. On October 21, 2014, the trial court held a brief hearing on Luis's motion to enter orders and signed the order on the petition to modify during the hearing. The trial court's order deviated from the standard possession order but did not grant Maria's request for alternate extended possession.[1] Maria appeals.

---

[1] The trial court's order gave Maria possession on (1) weekends during the school year beginning at the time the children's school is dismissed on the first, third, and fifth Friday of each month and ending on Sunday at 6 p.m.; (2) Tuesdays during the school year beginning at the time the children's school is dismissed and ending at 6 p.m.; and (3) Tuesdays not during the school year beginning at 6 p.m. and ending at 8 p.m.

**ADMISSIBILITY OF EVIDENCE**

In her first and second issues, Maria contends the trial court abused its discretion in admitting into evidence: (1) two letters written by the older son, expressing his preference to live with Maria; and (2) a 2011 letter Maria wrote expressing her desire to reunite with Luis and the terms for such a reunion; and (3) approximately ten text messages – nine of which contained exchanges between Maria and Luis regarding the children.

1.      The Older Son's Letters

In the first letter written by the older son dated August 26, 2014, he expressed a preference to live with his mother so he would not have to travel so far for school. The letter stated he did not want to wake up at 5:00 in the morning to go to school. In the second letter dated the same day, the older son stated he did not want to be separated from his brother and did not want to be away from his mother. The letter expressed how important a mother is in a child's life.[2]

In her brief, Maria asserts the trial court erred in admitting and publishing the letters to the jury because the statute allowing a child to express his preference of the person to designate his residence was repealed in 2009. *See* Act of May 27, 2009, 81st Leg. R.S., ch. 1113, § 31, 2009 Tex. Gen. Laws 3056, 3072 (repealing section 153.008 of the Code).[3] In addition, Maria asserts the letters were inadmissible for two additional reasons: (1) the letters are hearsay; and (2) they were produced during settlement negotiations.

Even if we assume the trial court erred in admitting the letters into evidence, we must also determine whether the error is reversible error. In making this determination, we review the entire

---

[2] Maria does not complain on appeal about the admission of a third letter in which the older son stated he did not want to write the other two letters and implied that the first two letters were written at his mother's and step-father's urging.
[3] Prior to its repeal, section 153.008 provided, "A child 12 years of age or older may file with the court in writing the name of the person who is the child's preference to have the exclusive right to designate the primary residence of the child, subject to the approval of the court." Act of May 27, 2003, 78th Leg, R.S., ch. 1036, § 5, 2003 Tex. Gen. Laws 2987, 2988; *see also* TEX. FAM. CODE ANN. § 153.009(d) (West 2014) ("In a jury trial, the court may not interview the child in chambers regarding an issue on which a party is entitled to a jury verdict.")

record. *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004). The erroneous admission of evidence is harmful and requires reversal only if the error probably resulted in the rendition of an improper judgment. *Nissan Motor Co. Ltd.*, 145 S.W.3d at 144; TEX. R. APP. P. 44.1(a)(1). Erroneously admitted evidence is harmless if the evidence is merely cumulative. *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867 873 (Tex. 2008); *Nissan Motor Co. Ltd.*, 145 S.W.3d at 144.

In this case, the record establishes the letters were merely cumulative of other evidence regarding the older son's preference of the person to designate his residence. For example, Maria testified the older son wanted the trial to be over and "wants to be with me." Similarly, Maria's older daughter testified she spoke with the older son the day before she testified, and he told her he wanted to live with their mother.

Because the letters about which Maria complains are cumulative of other evidence admitted at trial regarding the older son's expressed preference and Maria does not argue how she was harmed by the admission of the evidence, we hold any error by the trial court in admitting the letters was harmless. Maria's first issue is overruled.[4]

2.      2011 Letter and Text Messages

With regard to the 2011 letter and text messages, Maria asserts the trial court abused its discretion because the documents are written in Spanish, and Luis did not comply with Rule 1009 of the Texas Rules of Evidence with regard to the translation of the documents from Spanish to English. Rule 1009 provides a translation of a foreign language document is admissible if, at least 45 days before trial, the proponent serves the translation and the underlying foreign language document on all parties. TEX. R. EVID. 1009(a). Here, during the trial, the court initially sustained

---

[4] We note the record also contains contradictory evidence wherein the older son expressed an interest to live with his father, Luis.

Maria's objection to the admissibility of the letter and text messages; however, the trial court expressed a willingness to reconsider its rulings if Luis obtained translations of the documents. When Luis presented the translations to the trial court, Maria's attorney again objected that the translations were not provided 45 days before trial. After allowing Maria's attorney to review the translations, the trial court overruled Maria's objection and admitted the documents and translations into evidence.

We will again assume for purposes of this opinion that the trial court erred in admitting the evidence. During Luis's testimony, Luis testified regarding the content of each of the documents before each document was offered into evidence. Although some objections were made to leading questions and the testimony being hearsay, Maria does not raise any issue on appeal challenging the admissibility of Luis's testimony. As previously noted, erroneously admitted evidence is harmless if the evidence is merely cumulative. *Reliance Steel & Aluminum Co.*, 267 S.W.3d at 873; *Nissan Motor Co. Ltd.*, 145 S.W.3d at 144. Because the letter and text messages were cumulative of Luis's testimony, any error by the trial court in admitting the documents and translations into evidence was harmless.

## SUFFICIENCY

In her third issue, Maria challenges the sufficiency of the evidence to support the jury's finding that the order designating Maria as having the exclusive right to designate the primary residence should be modified to designate Luis. Jury findings relating to conservatorship are subject to ordinary legal and factual sufficiency review. *In re J.A.J.*, 243 S.W.3d 611, 616 n.5 (Tex. 2007); *MacGillivray v. MacGillivray*, No. 04-10-00109-CV, 2011 WL 2150352, at *5 (Tex. App.—San Antonio June 1, 2011, pet. denied) (mem. op.). "In so reviewing, we keep in mind that the jury is the sole judge of the credibility of witnesses and the weight to be given their testimony." *MacGillivray*, 2011 WL 2150352, at *5.

When reviewing a jury finding for legal sufficiency, we view the evidence in the light most favorable to the finding, "credit[ing] favorable evidence if reasonable jurors could, and disregard[ing] contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The ultimate test for legal sufficiency is whether the evidence would enable reasonable and fair-minded people to reach the verdict under review. *Id*. In determining whether evidence is factually sufficient to support a jury's verdict, we will set aside the jury's verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

In addressing legal sufficiency in her brief, Maria contends the only evidence Luis presented to support the jury's finding is the Spanish documents and their translations and the outdated social studies. In addressing factual sufficiency, Maria focuses on her testimony and the evidence she presented regarding the children's performance after six weeks in their new schools. Maria's brief does not address Luis's testimony.

The jury was presented evidence through Luis's testimony and the social studies that Luis had been the children's primary caregiver throughout their lives. Although Maria presented contrary evidence regarding her involvement, it was the jury's prerogative to determine credibility and the weight to be given the evidence. *MacGillivray*, 2011 WL 2150352, at *5. The jury also heard testimony from the older son's karate teacher who stated Luis attends all of the older son's classes, but he had seen Maria only twice in the six years the older son had been enrolled in the class. In addition, the jury heard Luis's testimony that Maria called the police on one occasion when Luis insisted on taking the older son to his karate class. The jury also heard the testimony of the investigator appointed by the court to prepare the social studies. In his social study reports, the investigator stressed the importance of the children remaining in their current schools; however, the evidence established Maria moved the children to another school district thirty miles

from their schools, friends, and activities approximately one month before school was to begin. The jury also heard considerable evidence regarding the contentious relationship between Maria and Luis. Although there was evidence that both parents engaged in disruptive behavior, the evidence was undisputed that Maria withheld visitation from Luis on an occasion when he had a summer trip planned with the children. The jury also heard testimony regarding the level of cooperation between Maria and Luis when the older son fractured his finger at school. When Luis picked his older son up from school, Luis provided Maria with complete information about where Luis was taking him for treatment. Maria, however, withheld information from Luis regarding a subsequent appointment with a hand specialist. Finally, the jury heard testimony about Maria instructing a pharmacy not to release medication to Luis for their younger son.

Given the conflicting evidence, we must defer to the jury's role in deciding the credibility of the witnesses and the weight to be given their testimony. Having reviewed the record as a whole, we conclude the evidence is legally and factually sufficient to support the jury's finding.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

In her final issue, Maria asserts the trial court erred in failing to enter findings of fact and conclusions of law under section 153.258 of the Code after it denied her request for an alternate extended standard possession schedule under section 153.317. In addressing this issue, we note Maria does not separately challenge the denial of her request for extended visitation or the terms of the trial court's possession order. Instead, her only challenge is to the trial court's failure to state the specific reasons for the variance from the extended standard possession order.

If a conservator elects before or at the time of the rendition of a possession order, the order must include the extended schedule contained in section 153.317, including possession on Thursdays after school, weekend possession beginning at the time the child's school is regularly dismissed on Friday, and weekend possession ending at the time school resumes on Monday. *See*

Tex. Fam. Code Ann. § 153.317 (West 2014).  In this case, Maria timely made the election provided for in section 153.317; however, the trial court's order does not incorporate the extended schedule.  Pursuant to section 153.258, Maria timely requested the trial court to state the specific reasons why the order varied from the standard order; however, the trial court's order did not include its reasons.[5]  *Id.* at § 153.258.  Accordingly, Maria requests this court to abate the appeal and order the trial court to make the requisite findings.  *See In re M.A.S.*, 233 S.W.3d 915, 923-24 (Tex. App.—Dallas 2007, pet. denied) (noting appellate court abated appeal and ordered trial court to make findings under section 153.258).

Here, the trial court erred in failing to state its specific reasons for varying from the standard possession order; however, the failure to make such findings does not require reversal if the record affirmatively demonstrates Maria suffered no harm.  *Gray v. Gray*, 971 S.W.2d 212, 217 (Tex. App.—Beaumont 1998, no pet.).  "The test for determining whether [an appellant] suffered harm is whether the circumstances of the case would require an appellant to guess the reason or reasons that the judge has ruled against it."  *Id.* (internal citations omitted); *see also Michelena v. Michelena*, No. 13-09-00588-CV, 2012 WL 3012642, at *20 n.26 (Tex. App.—Corpus Christi June 15, 2012, no pet.) (mem. op.).

In this case, Luis's attorney stated Luis intended to re-enroll the children at their former schools, and the following discussion ensued regarding the distance[6] between Maria's new house and the schools, and the effect of that distance on the possession order:

---

[5] The findings required by section 153.258 are "[w]ithout regard to Rules 296 through 299, Texas Rules of Civil Procedure."  *Id.* at § 153.258.

[6] Although Luis's attorney initially stated that Luis testified the distance between Luis's home and Maria's home was 50.3 miles, Maria's attorney clarified, "his testimony is very clear that it's 50 miles from his residence to Smithson Valley school.  It's only 30 miles from his residence to her residence.  It's only 30 miles from the school at Southwest Independent School District to her residence.  It's only 30 miles.  The extra miles is to Smithson Valley."  In response to a subsequent question by the trial court after this clarification, Luis's attorney informed the trial court the distance between the school and Maria's home was 35 miles.

THE COURT: Well, why couldn't I compromise and let her pick the children up from school on Friday, and then return them at 6:00 on Sunday?

[Luis's attorney]: Judge, I think that would work.

[Maria's attorney]: Well, Judge, she's entitled, if we ask for it, to have Thursdays overnight. That's just standard.

THE COURT: I know what she's entitled to, counsel, but what I have to do is what's in the best interest of these children.

[Maria's attorney]: But she's taking them to school, I mean she has the responsibility to take them to and from school. That's not his burden.

THE COURT: I know. But that means they have to get up really early. That's the problem. I mean they can't get to school and then just lose time sleeping, because they're not going to do well in their classes. We have to give them enough time to sleep. And we're just talking about giving up Thursday night, and so normally it's from 3:00, after school, until they get up to go to school the next morning. Basically that's time for them to do homework and then go to sleep. So she's not losing that much time.

[Maria's attorney]: So you would say she would only get them from Friday, and not Thursdays overnight?

THE COURT: Yeah. Thursdays, I think that, you know, she can get them, but that's also a problem, I mean, you know, we all want these kids to have the best possible — of course that includes mom too. That's one thing I think counted in Mr. Valdivia's behalf, that he was willing to make them available to mom. I want to do the same thing. I just want to make it easier for the kids. They have a perfectly comfortable schedule at the school they were at before, so —

[Maria's attorney]: Well, I mean, of course, she's entitled to move within Bexar County, so —

THE COURT: Well, if she's going to move back, that would make a big difference, I would guess. But let me suggest this: I don't want to do anything to interfere with their school, but if she wants to pick them up maybe on Tuesday from school, but have them back home by 6:00, so they can make sure their homework is done and, you know, go to bed at a decent hour.

[Luis's attorney]: Okay. Pick them up after school and have them home by 6:00?

THE COURT: Yes. That gives her an opportunity to take them for a snack and, you know, spend time with them.

[Maria's attorney]: So then you're saying she would only be entitled from Friday after school —

THE COURT: Until Sunday at 6:00. And then Tuesdays after school until 6:00.

A more abbreviated discussion of the trial court's reasons also appears in the record from the hearing on the motion to enter:

[Maria's attorney]: Everything is in there, Judge, but after we had our hearing we did file a request for a findings of fact, conclusions of law, and a formal request that she wanted the extended Thursdays overnight and [sic] Monday school. I think the judge had ruled that you weren't going to give that because you didn't want them traveling long distances.

THE COURT: Right.

Because the trial court stated its reasons for varying from the standard order on the record, Maria was not required to guess the reasons for the variations. Accordingly, Maria was not harmed by the trial court's not stating the reasons in its order, and her final issue is overruled. *Michelena*, 2012 WL 3012642, at *20 n.26; *Gray*, 971 S.W.2d at 217.

## CONCLUSION

The trial court's order is affirmed.

Sandee Bryan Marion, Chief Justice