**Milton HARTMAN and Carol Hartman, Appellants,**

v.

**Larry URBAN and Eugene Urban, Individually and as Partners in The Partnership Known as Urban Engineering, Appellees.**

No. 13–95–569–CV.

Court of Appeals of Texas, Corpus Christi.

May 15, 1997.

Rehearing Overruled June 12, 1997.

William J. Tinning, Portland, for appellants.

C. M. Henkel, III, Henkel, Hyden & Sanders, Corpus Christi, for Appellees.

Before SEERDEN, C.J., and DORSEY and CHAVEZ, JJ.

## OPINION

DORSEY, Justice.

Milton and Carol Hartman sued Larry and Eugene Urban, individually and as partners in the partnership known as Urban Engineering, to recover damages for making an alleged misrepresentation in a plat of a subdivision lot which they purchased. The trial court granted summary judgment for Urban, along with sanctions against the Hartmans for bringing a frivolous lawsuit. By two points of error, the Hartmans challenge the granting of the summary judgment and the award of sanctions. We affirm in part and reverse in part.

Padre Island Investment Corporation hired Urban to prepare a plat of Padre Island–Corpus Christi Commodore's Cove Unit One, a subdivision located in Nueces County, Texas. Urban completed the subdivision plat about February 24, 1972, and it was recorded on March 3, 1972 in the Map Records of Nueces County, Texas in Volume 38, Pages 34–35. About January 6, 1975, Urban revised the plat, changing the dimension of Lot 31, Block 3, Padre Island–Corpus Christi Commodore's Cove Unit One to correct an error made in the original plat. The revised plat showed a correction on the dimension of Lot 31 to read that the waterfront frontage was 41.24 feet. The revised plat was delivered to Padre Island Investment Corporation, but never filed of record.

About March 15, 1993, Milton Hartman, a home builder, bought Lot 31 for the purpose of building a home on the lot. He relied on the description of this lot as set forth in the plat filed in the Map Records. The plat represented the lot as having 53.12 feet of water frontage. After buying the lot, Hartman designed a home which he planned to build on the lot. To his dismay, he discovered that the home would not fit the lot because the lot had a water frontage of about 41 feet, instead of 53.12 feet. Hartman

checked every source that a reasonable, prudent, and diligent lot buyer would and should investigate and research before buying the lot. Despite his efforts, he did not know before he bought the lot about the existence of a corrected, modified plat for this lot. According to Hartman, no one, including Larry and Eugene Urban, or Urban Engineering, has filed a revision, correction, or modification of the plat of Lot 31 with the Map Records Department of Nueces County.

The Hartmans sued Urban alleging that they bought Lot 31 based upon representations made in the filed plat. The gist of their complaint is that the plat showed that their lot would have 53.12 feet of waterfront frontage, they relied on the plat and purchased the lot on that reliance. They later learned that the lot had only 41.24 feet of waterfront frontage. They contend that this discrepancy was not detectable by them, but that Urban had detected the error in his plat and had corrected it, but not filed it. The Hartmans assert that this was a material and substantial change, both from the purchase price paid and from the value of the home which they could place upon the smaller sized lot.

The Hartmans assert that Urban's representations in its incorrect plat constituted negligence and violated the Texas Deceptive Trade Practices–Consumer Protection Act (the DTPA).[1]

Urban moved for summary judgment on the grounds that it did not owe a duty to the Hartmans, the Hartmans did not have a DTPA claim because they were not consumers and because the plat was prepared in 1972, a time prior to the DTPA's inception, and the statute of limitations barred their causes of action.

The Hartmans' response asserted that they are consumers as defined by the DTPA, that privity of contract is not a prerequisite to the imposition of a duty upon Urban, that Urban fraudulently concealed the revisions and corrections to the plat of the lot, and that Texas' ten-year statute of repose does not time bar their claims.

The trial court granted summary judgment for Urban without specifying the ground or grounds on which it relied.

### Standard Of Review

To prevail on a summary judgment motion, a movant must establish that no genuine issue about any material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995) (per curiam). A defendant who conclusively negates at least one of the essential elements of each of the plaintiff's causes of action or who conclusively establishes all of the elements of an affirmative defense is entitled to a summary judgment. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). In reviewing a summary judgment, we must accept as true evidence in favor of the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, an appellate court will affirm a summary judgment if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

By point one, the Hartmans assert that the trial court erred in granting summary judgment because genuine issues of material fact exist concerning all claims, and no bar exists to foil these claims.

### Negligence

■ Urban moved for summary judgment on the ground that they owed no duty or obligation to the Hartmans concerning the platting of the property. Urban's summary judgment evidence included Larry Urban's affidavit in which he stated, in relevant part:

Padre Island Investment Corporation hired Urban Engineering to prepare a plat of Padre Island–Corpus Christi Commodore's Cove Unit One, Nueces County, Texas.... [T]he plat of said subdivision

---

1. *See* TEX. BUS. & COM.CODE ANN. §§ 17.01–17.854    (Vernon 1987 & Supp.1997).

... was completed on or before February 24, 1972[and] was recorded on March 3, 1972 in the Map Records [of] Nueces County, Texas.... Subsequent thereto, on or about January 6, 1975, the plat of said subdivision was revised, changing the dimension of Lot Thirty–One (31), Block Three (3), Padre Island–Corpus Christi Commodore's Cove Unit One to correct an error made in the original plat dated February 24, 1972.... The revised plat was delivered to Padre Island Investment Corporation. Same reflected a correction on the dimensions of Lot 31 to read that the waterfront footage was 41.24 feet.

At no time was Urban Engineering hired by Plaintiffs [the Hartmans] in this cause of action would [sic] perform any services or deliver any goods to Plaintiffs herein.

At common law, a negligence cause of action consists of: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Firestone Steel Products Co. v. Barajas,* 927 S.W.2d 608, 613 (Tex.1996); *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). The threshold question in a negligence action is duty. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). Whether a duty exists is a question of law. *Joseph E. Seagram & Sons v. McGuire,* 814 S.W.2d 385, 387 (Tex.1991); *Greater Houston Transp. Co.,* 801 S.W.2d at 525. Whether a defendant owes a duty to the plaintiff depends on several factors, including risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury, and the consequences of placing the burden on the defendant. *Greater Houston Transp. Co.,* 801 S.W.2d at 525.

The issue is whether Urban owed a duty to a purchaser of a lot who relied on his plat to exercise reasonable care in its preparation. In his affidavit Urban states that Urban Engineering was hired by Padre Island Investment Corporation to prepare a plat of Padre Island–Corpus Christi Commodore's Cove Unit One in Nueces County, Texas, which was done and filed in the Map Rec-

ords of Nueces County. On the face of the plat is a certification by Padre Island Investment Corporation saying it has had the land surveyed, that streets and easements are dedicated to the public and that the attached plat is for the purpose of description and dedication. Also on the face of the plat is a certification of Larry Urban, a registered professional engineer for Urban Engineering, stating that the plat was prepared from a survey on the ground under his direction and is true and correct, and that Urban Engineering has been engaged to set all lot and block corners without delay. The certification by Urban is signed by him and contains his license number. The plat of the subdivision of Commodore's Cove Unit One was filed for record in the Map Records of Nueces County, and it contained Lot 31, Block 3 with its erroneous dimensions.

The issue is whether the certification by a licensed professional engineer and the filing of a plat prepared by him gives rise to a duty to a purchaser who relies on the erroneous map to his detriment.

A subdivision of land is done by the owner of land under the appropriate statute. TEX. LOC. GOV'T CODE ANN. §§ 212.004, 232.001 (Vernon 1988 & Supp.1997). The plat must meet certain requisites before it may be filed and must be approved by certain units of government, depending on where the subdivision is located. Sections 212.004 and 232.001 both provide that "[t]he owner of a tract of land ... who divides the tract in two or more parts to lay out a subdivision ... must have a plat of the subdivision prepared" and that the plat be filed and recorded with the county clerk of the county in which the tract is located. The action of subdividing is that of the owner of the land. In the course of preparing to subdivide, the owner probably utilizes various professionals to aid him in accomplishing his purpose. If the owner hires a surveyor or engineer to design the subdivision, *i.e.,* the shape, number and location of lots and to prepare a map showing the overall view, the owner may accept or reject the proposal of the designer. If the owner rejects it, and chooses not to divide his land in the proposed manner, he can call for a new scheme to be

prepared, and will continue to do so until a design is reached that will be acceptable to him and will meet the demands of the market as well as the governmental agencies that must approve the plan. We conclude the plat when filed is the product of the owner of the land and not of the engineer who prepares the plat.

Urban's duty of care to third parties is comparable to the duties of care discussed in *Barcelo v. Elliott*, 923 S.W.2d 575 (Tex.1996) and *Krishnan v. Sepulveda*, 916 S.W.2d 478 (Tex.1995). In *Barcelo*, the issue presented was whether an attorney who negligently drafted a will or trust agreement owed a duty of care to persons intended to benefit under the will or trust, even though the attorney never represented the intended beneficiaries. The court stated that at common law, an attorney owed a duty of care only to his or her client, not to third parties who the attorney may have damaged by negligent representation of the client. Without this "privity barrier," clients would lose control over the attorney-client relationship, and attorneys would be subject to almost unlimited liability. The court said that the greater good is served by preserving a bright-line privity rule which denies a cause of action to all beneficiaries whom the attorney did not represent. It held that an attorney retained by a testator or settlor to draft a will or trust owes no professional duty of care to persons named as beneficiaries under the will or trust.

In *Krishnan*, the court considered whether parents may recover damages from the birth of a stillborn fetus resulting from injury to the mother caused by the allegedly negligent diagnosis, prenatal supervision, and treatment of the mother by her physician. Olga and Humberto Sepulveda sued Dr. Elizabeth Krishnan alleging that her negligence in providing diagnosis, prenatal supervision, and treatment of Olga caused their child to be delivered stillborn. The court considered whether Humberto may recover mental anguish damages suffered as a result of Olga's injury which was proximately caused by Dr. Krishnan's allegedly negligent diagnosis, prenatal supervision, and treatment of Olga including the loss of the fetus. The court

stated that Dr. Krishnan had a clear, legal duty to provide competent medical care to Olga. However, this duty, which arises out of the physician/patient relationship, was not owed by Dr. Krishnan to Humberto.

In the instant case, Padre Island Investment Corporation hired Urban to plat a subdivision. The purpose of the subdivision was to sell lots to the public after the subdivision was approved. Although Urban did not know that the Hartmans would be the purchases of Lot 31, he should have known that it would be for sale to the public and would probably be bought. However, Urban was hired by the owner of the property to lay out the lots so the subdivision could be created. The owner, Padre Island Investment Co., once Urban had prepared a plat to its liking, had it approved and filed it.

After Urban corrected the mistake to Lot 31, it delivered the corrected plat to Padre. Under these facts, no privity existed between Urban and the Hartmans. Urban's situation is akin to the relationships discussed in *Barcelo* and *Krishnan*.

We hold that Urban did not owe the Hartmans a duty of care in the preparation of the original plat of the subdivision nor to correct of record any errors the plat contained. We hold that the trial court did not err by granting summary judgment on the negligence claim.

### *DTPA*

■ Section 17.63 of the DTPA provides, in relevant part, that the "provisions of this subchapter apply only to acts or practices occurring after the effective date of this subchapter...." TEX. BUS. & COM.CODE ANN. § 17.63 (Vernon 1987). The effective date of the DTPA was May 21, 1973. *Litton Indus. Products, Inc. v. Gammage*, 668 S.W.2d 319, 324 (Tex.1984).

The original plat of the subdivision was prepared by Urban on February 24, 1972 and was filed for record March 3, 1972, well before the effective date of the act. The DTPA did not apply to any misrepresentation prior to its effective date. Appellants argue on appeal that "it is the continuing characterization of the on file, uncorrected

plat and the sale based upon it which occurred after the effective date of the Texas Deceptive Trade Practice Act which is determinative, not the fact that the erroneous, misleading original platting occurred prior to the inception of the act." Appellants appear to argue that the uncorrected plat on file at the county clerk's office constituted a continuing misrepresentation that, while first made before the effective date of the DTPA, continued to be made after the effective date of the act, thereby constituting an actionable misrepresentation under the DTPA.[2]

■ We disagree with appellants that the presence of the plat constituted a "continuing misrepresentation" actionable under the DTPA. The DTPA provides that "the provisions of this subchapter apply only to acts or practices occurring after the effective date of this subchapter ..." Tex. Bus. & Com.Code Ann. § 17.63 (Vernon 1987). The presence of Urban's plat at the county clerk's office constituted neither an "act" nor a "practice." A true "continuing misrepresentation" for purposes of the DTPA involves actual, active assurances and reassurances of something by the party sued. *See Padre Island Inv. Corp. v. Sorbera*, 677 S.W.2d 90, 94 (Tex.App.—San Antonio 1984, writ dism'd). The substantive rights and duties of a party pursuant to an agreement are those under the law as it existed at the time the agreement was made. A subsequent law that changes those rights and duties would violate the Texas Constitution's prohibition against *ex post facto* laws. *Cape Conroe Ltd. v. Specht*, 525 S.W.2d 215, 219–20 (Tex.Civ. App.—Houston [14th Dist.] 1975, no writ). In the present case, Urban's representation of the size of the lot was made prior to the effective date of the DTPA. The subsequent enaction of the DTPA could not make that prior misrepresentation actionable, despite the fact that the plat remained recorded and uncorrected at the county clerk's office.

■ Appellants also argue that the action by Urban in preparing a corrected plat, but not filing it in the public records, constitutes a misrepresentation. The correction was prepared by Urban on January 6, 1975, which was after the effective date of the act. Appellant urges the application of *Woods v. Littleton*, 554 S.W.2d 662 (Tex.1977), which holds that when a misrepresentation is after the effective date of the DTPA although the sale was before the act, the misrepresentation is actionable. However, the preparation of a corrected plat, without more, is not a misrepresentation and cannot implicate the DTPA. We hold that the trial court did not err by granting summary judgment on the DTPA claim. We overrule point one.

### Sanctions

■ By point two, the Hartmans assert that the trial court erred when it sanctioned them pursuant to the DTPA and Rule 13, Texas Rules of Civil Procedure. The court imposed sanctions on the Hartmans pursuant to Rule 13 and the DTPA. It awarded Urban $3,600 as reasonable attorneys fees, and it awarded additional attorneys fees conditioned on the Hartmans' appeal of the case.

■ Section 17.50(c) of the DTPA provides that "[o]n a finding by the court that an action under this section was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs." Tex Bus. & Com.Code Ann. § 17.50(c) (Vernon Supp.1997). "Groundless" under the DTPA has the same meaning as "groundless" under Rule 13 of the Texas Rules of Civil Procedure: "[N]o basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." Tex.R. Civ. P. 13; *Donwerth v. Preston II Chrysler–Dodge, Inc.*, 775 S.W.2d 634, 637 (Tex.1989). The proper standard for determining whether a case is groundless for purposes of Section 17.50(c) is whether the totality of the tendered evidence demonstrates an arguable basis in fact and law for the consumer's claim. *Splettstosser v. Myer*,

---

2. We note that, in order to properly be "consumers" under the DTPA, the Hartmans would have to have been misled after September 1, 1975, when the DTPA was amended to cover real estate transactions as well as personal property transactions. *See Ferguson v. Beal*, 588 S.W.2d 651, 653 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.).

779 S.W.2d 806, 808 (Tex.1989); *Donwerth,* 775 S.W.2d at 637.

Appellate review of a trial court determination that a party's action was groundless, brought in bad faith, or brought for the purpose of harassment is a question of law under an abuse of discretion standard. *Donwerth,* 775 S.W.2d at 637 n. 3. An appellate court should set aside the trial court's ruling only if, after reviewing the entire record, it is clear that the trial court abused its discretion. *See Simon v. York Crane & Rigging Co., Inc.,* 739 S.W.2d 793, 795 (Tex.1987). An abuse of discretion occurs when a court acts without reference to guiding rules or principles, or acts arbitrarily or unreasonably. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

In the instant case, while we disagree with appellants' assessment of the effect of the erroneous plat, we do not believe that their argument is so outside the pale of the law that it could be considered groundless for purposes of the DTPA, and therefore sanctionable. In *Woods,* the supreme court determined that although the chain of events which led to the act complained of began prior to the effective date of the DTPA, that fact does not preclude recovery under the DTPA for a deceptive practice occurring after the DTPA's effective date. *Woods,* 554 S.W.2d at 665–66. Appellants argue that the presence of the uncorrected plat in the county records, upon which consumers could be expected to rely, constituted a continuing misrepresentation by Urban. While this argument fails, we believe that it is a good faith argument for the extension, modification, or reversal of existing law, and therefore was not groundless or sanctionable under the DTPA. Sanctions also would not be proper under Rule 13. The question whether a professional engineer has a duty to the purchaser of a lot to use reasonable care in the preparation of a plat that is filed for record is not a frivolous issue and sanctions could not be awarded for filing such a claim under the common law. *See Splettstosser,* 779 S.W.2d at 808. We hold that the trial court abused its discretion in awarding sanctions, and sustain appellants' second point of error.

We REVERSE the portion of the trial court's judgment awarding sanctions against appellants. Otherwise, the judgment of the trial court is AFFIRMED.