## MAJORITY OPINION

Milton Stanford MOSK, III, Appellant,

v.

Cheryl Warren THOMAS f/k/a Cheryl Warren Mosk, Appellee.

No. 14–02–01130–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 4, 2003.

Michael D. Conner, Eric Lipper, Houston, for appellant.

Elton L. Brownshadel, Randall D. Wilkins, Houston, for appellee.

Panel consists of Justices YATES, HUDSON, and FOWLER.

## MAJORITY OPINION

J. HARVEY HUDSON, Justice.

Milton Mosk, III ("Mosk") appeals from a judgment ordering him to pay $17,500 in attorney fees for bringing a frivolous suit under section 17.50(c) of the Texas Deceptive Trade Practices Act (DTPA). Characterizing the award of attorney fees as a sanction, Mosk claims (1) the evidence is legally and factually insufficient to support the sanction, (2) the trial court abused its discretion in imposing the sanction, (3) the sanction violates his constitutional right of due process, and (4) the trial court committed reversible error by abusing its discretion. We affirm.

Milton Mosk and Cheryl Thomas (formerly Cheryl Mosk) were first married on November 9, 1992. The marriage was terminated by divorce in November 1997. As part of the property settlement agreement, Mosk gave Thomas a promissory note in the amount of $37,200.

Mosk and Thomas were remarried in February 1999. Thomas sold her residence and the couple purchased a house in Sugar Land located at 31 Pembroke. The second marriage also ended in divorce on March 23, 2000. The property division in the second divorce was facilitated by a mediated property settlement agreement. Under the terms of the Rule 11 agreement, Mosk was to get the Pembroke property. To assure recovery of her half of the marital estate, the parties agreed that Thomas would take a promissory note

for $47,500. The pertinent handwritten provisions of the agreement are as follows:

g. Agreements regarding property (division of community estate, confirmation of separate property and allocation of debts): *(1)House to H; W to vacate by 4/15/00. H to be responsible for mortgage & SW note. (2)H to execute a real property lien note in principal amount of $47,500—with payments to commence October 1, 2000—$800/month ($400 on 1st & $400 on the 15th of each month). This note will replace the promissory note in the original amount of $37,200 executed by H on 11/18/97 & which note will be considered null & void no interest shall accrue unless note becomes delinquent, then interest at rate of 10% per annum.*

Pursuant to the Rule 11 agreement, Thomas executed a special warranty deed conveying her interest in the Pembroke property to Mosk. Mosk, in turn, executed a real property lien note in the amount of $47,500. The real property lien note, however, contained the following proviso that was not in the handwritten Rule 11 agreement:

In the event the property securing this Note is sold or transferred, Payee [Thomas] shall release any lien created by this note upon written demand by the Grantor [Mosk] herein. Grantor shall replace the collateral with a lien of equal stature on replacement property acquired by him.

The real property lien note was secured by a third lien deed of trust containing similar terms regarding the sale of the property:

11. If all or any part of the Property is sold or transferred, Beneficiary [Thomas] agrees that Grantor [Mosk] will be entitled to a release of the lien created herein upon written demand by Grantor.

Further, in the event that all or any part of the above described property is sold or transferred, Grantor shall replace the collateral with a lien of equal stature to the lien herein created on a replacement Property acquired by Grantor. In the event Beneficiary fails to tender the required release within five (5) business days of demand therefore, Beneficiary grants to Grantor a power of attorney coupled with an interest to execute said release.

Although both the real property lien note and the third lien deed of trust purport to bind Thomas, the documents were executed solely by Mosk.

Thereafter, Mosk married Denise Jucker in June 2000, and he moved out of the Pembroke property. Mosk put the property up for sale, and shortly thereafter, Samy Rehem agreed to buy the property for $285,000. Mosk executed a sales agreement with Rehem in which both parties agreed to close on the sale by July 11, 2000. On June 19, 2000, Mosk's attorney sent a letter to Thomas's attorney making the following demand:

Pursuant to the terms of paragraph 11 of the above referenced document [third lien deed of trust], please be advised that Milton Mosk has an Earnest Money Contract for the sale of the above described real property. Mr. Mosk is prepared to replace the lien granted upon the referenced real property with a first and superior security interest in and to his 1995 Toyota 4 door automobile. All things considered, a security interest in the Toyota probably constitutes a superior lien position than that created by the Third Lien Deed of Trust. As you are aware, Ms. Mosk [Thomas] has 5 days to tender a release of the Third Lien Deed of Trust document.

Thomas refused to tender a release of her lien. Thus, on June 27, 2000, Mosk's attorney sent another letter directly to Thomas in which he threatened to sue her if she did not execute a release:

Your refusal to release the subject real property from operation of the Lien is clearly a breach of your contract with my client. In addition, since my client is a consumer as that term is defined by the Texas Business and Commerce Code, your actions probably constitute a violation of the Texas Deceptive Trade Practices Act. Since the transaction in question involves the acquisition of real property, your actions further constitute a violation of Article 27.01 (Fraud in a Real Estate Transaction) of the Texas Business and Commerce Code. I bring these matters to your attention because I am recommending to my client that he file a civil lawsuit against you for the recovery of his damages. In addition, as you may be aware, both the Texas Deceptive Trade Practices Act and Fraud statute allow for recovery of exemplary damages and attorney's fees by a successful Plaintiff.

The threats proved unsuccessful and Thomas refused to release her deed of trust. Mosk could not, therefore, complete the sale of the Pembroke property. On July 28, 2000, Rehem's attorney sent a demand letter to Mosk seeking recovery of $3,198.01 in damages stemming from Mosk's breach of the sales agreement. When Mosk refused to pay, Rehem sued to recover his damages.

Mosk, in turn, sued Thomas for breach of contract, fraud in a real estate transaction, indemnification for claims asserted against him by Rehem, DTPA violations, and a declaratory judgment. Mosk also sought punitive damages of at least $250,000.

Thomas responded with a general denial and a counterclaim for common law fraud, fraudulent misrepresentation, intentional infliction of emotional distress, breach of contract, and violations of the DTPA.

To facilitate a resolution of all the claims, Rehem's suit against Mosk was consolidated with Mosk's suit against Thomas and her counterclaims against Mosk.

Both Thomas and Mosk filed motions for summary judgment. The trial court granted Mosk an interlocutory summary judgment on all of Thomas's claims except her DTPA cause of action. Thomas's motion for summary judgment was denied. Accordingly, the trial court ordered that Thomas take nothing as to all of her claims save her DTPA cause of action. Thereafter, the parties proceeded to trial before the court. After considering the evidence adduced by the parties, the trial court rendered a final judgment in which it ordered that Mosk take nothing on his claims against Thomas, that Thomas recover attorney fees from Mosk in the amount of $17,500, and that Rehem recover from Mosk $5,554.21 in damages and attorney fees.

■ In his first and second issues for review, Mosk contends the evidence is legally and factually insufficient to support "an award of sanctions," *i.e.*, Thomas's attorney fees. The attorney fees at issue were awarded to Thomas under the authority of section 17.50(c) of the DTPA. The statute provides, as follows:

> c) On a finding by the court that an action under this section was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs.

Tex. Bus. & Com.Code Ann. § 17.50(c) (Vernon 2002). Notwithstanding the fact the trial court awarded attorney fees to Thomas under the DTPA, Mosk supports his contention by citing a number of decisions regarding the imposition of sanctions under Rule 13. *See* Tex.R. Civ. P. 13.

■ The Texas Supreme Court has held the term "groundless" has the same meaning in the DTPA and Rule 13, *i.e.*, "[n]o basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Donwerth v. Preston II Chrysler–Dodge, Inc.*, 775 S.W.2d 634, 637 (Tex. 1989). Moreover, the same conduct may implicate both section 17.50(c) and Rule 13, and some courts have categorized the award of attorney fees under section 17.50(c) as a sanction. *See Hartman v. Urban*, 946 S.W.2d 546, 551 (Tex.App.-Corpus Christi 1997, no writ); *Davila v. World Car Five Star*, 75 S.W.3d 537 (Tex. App.-San Antonio, no pet.); *Bohls v. Oakes*, 75 S.W.3d 473, 480 (Tex.App.-San Antonio 2002, pet. denied). However, we do not deem the award of attorney fees under the DTPA as punitive sanctions. While a sanction may include the award of attorney fees, restitution is not punishment; it is simply the restoration of a loss caused by one's own misfeasance or malfeasance. *See Falk & Mayfield L.L.P. v. Molzan*, 974 S.W.2d 821, 823 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). Accordingly, we omit from our analysis any reference to decisions, standards of review, or rationale associated with the imposition of Rule 13 sanctions.

■ The trial court was authorized to award attorney fees to Thomas under the theory that Mosk's suit was "groundless." Tex. Bus. & Com.Code Ann. § 17.50(c). The standard for determining whether a suit is groundless considers "whether the totality of the tendered evidence demonstrates an

arguable basis in fact and law for the consumer's claim." *Selig v. BMW of N. Am., Inc.*, 832 S.W.2d 95, 103–04 (Tex. App.-Houston [14th Dist.] 1992, no writ) (quoting *Splettstosser v. Myer*, 779 S.W.2d 806, 808 (Tex.1989)). Moreover, here the trial court was authorized to award attorney fees if Mosk's suit was groundless either in *law* or fact; whether a suit is groundless in law is a legal question. *See Donwerth*, 775 S.W.2d at 637; *Riddick v. Quail Harbor Condominium Ass'n, Inc.*, 7 S.W.3d 663, 677–78 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Thus, while Mosk raises issues regarding sufficiency of the evidence, our review of a trial court's determination to award attorney fees under section 17.50(c) is a question of law under an abuse of discretion standard. *Riddick*, 7 S.W.3d at 678; *Selig*, 832 S.W.2d at 103–04.

■■■ Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds for asserting error, but are relevant factors in assessing whether the trial court abused its discretion. *Gray v. Gray*, 971 S.W.2d 212, 213 (Tex.App.-Beaumont 1998, no pet.). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or when it acts without reference to any guiding rules or principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate justice in a similar circumstance does not demonstrate that an abuse of discretion occurred. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Gray*, 971 S.W.2d at 214; *Valdez v.*

*Valdez*, 930 S.W.2d 725, 731 (Tex.App.-Houston [1st Dist.] 1996, no writ.). Furthermore, an abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex.App.-Houston [1st Dist.] 1993, writ denied).

■■■ The evidence establishes that Mosk's suit was groundless in law. Mosk was not entitled to bring a DTPA suit because he was not a "consumer" as that term is defined by the act. A "consumer" is defined under the act as "an individual ... who seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM.CODE ANN. § 17.45(4) (Vernon 2002). Whether a plaintiff is a consumer under the DTPA is a question of law to be determined by the trial court from the evidence. *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 133 (Tex.App.-Corpus Christi 2001, no pet.). Here, Mosk's own pleadings admit that he acquired the Pembroke property not by purchase or lease, but by virtue of a property settlement in a divorce proceeding. Therefore, Mosk was not a "consumer" and was not authorized to bring a DTPA suit. *See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 273–74 (Tex.1995). By finding this suit "frivolous," the trial court did not abuse its discretion in granting attorney fees to Thomas. Accordingly, Mosk's first and second issues for review are overruled.

■■■ In his third issue, Mosk contends the trial court abused its discretion in ordering "sanctions." For reasons we have already set forth above, the trial court did not abuse its discretion in awarding attorney fees to Thomas. However, here Mosk specifically complains that the trial court should have assessed Thomas's attorney fees not against him personally, but against his attorney who filed the frivolous suit. Mosk cites no direct authority

in support of his position, and we have found none. Section 17.50(c) sets out a mechanism for a defendant to recover his or her attorney fees. Moreover, it is well established that attorney fees can be assessed against a party in a DTPA action. *See, for example, Selig,* 832 S.W.2d at 104; *Maronge v. Cityfed Mortgage Co.,* 803 S.W.2d 393, 396 (Tex.App.-Houston [14th Dist.] 1991, no writ). Accordingly, we find the trial court did not abuse its discretion in ordering Mosk to pay Thomas's attorney fees. Mosk's third issue is overruled.

In his fourth issue, Mosk claims the "sanctions" violate his due process rights because he is being punished for his attorney's culpability. However, as we have already stated, we do not construe the award of attorney fees as a punitive sanction requiring review under the standards set forth in *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex. 1991).[1] Accordingly, Mosk's discussion of "punishment" and "culpability" is misplaced. Mosk's fourth issue is overruled.

In his fifth issue, Mosk contends the errors previously alleged by him constitute reversible error because they were harmful to him. However, we have found no error in the trial court's award of attorney fees. Accordingly, Mosk's fifth issue is overruled.

The judgment of the trial court is affirmed.

FOWLER, J., filed a concurring opinion.

WANDA McKEE FOWLER, Justice, concurring.

I fully agree with and join in the majority opinion. I write separately only to address two issues.

First, appellant has argued that we should apply the whole panoply of sanctions case law-most notably *TransAmerican*-to this case. *See, e.g., TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913 (Tex.1991); *Spohn Hosp. v. Mayer,* 104 S.W.3d 878 (Tex.2003); *Braden v. Downey,* 811 S.W.2d 922 (Tex.1991). Based on this case law, he claims the trial court had to hold a hearing to develop his reasons for filing suit and the intentions of appellant and his lawyer. His argument continues that, without an evidentiary hearing on this issue—his reasons for filing suit and his and his lawyer's intentions—the court cannot determine if it is fair to order appellant to pay the attorney's fees of his opposing counsel. This is wrong for several reasons.

To begin with, section 17.50(c) of the Deceptive Trade Practices Act is different from Rule 13 and the discovery sanctions rule, Rule 215.2(b). *Compare* TEX. BUS. & COM.CODE § 17.50(c), *with* TEX.R. CIV. P. 13, 215.2(b). Section 17.50(c) authorizes imposition of attorneys' fees simply on a showing that the suit is groundless in law. TEX. BUS. & COM.CODE § 17.50(c). Unlike the other sanction settings, there need not also be a showing of bad faith; groundlessness in law alone is enough. *See id.*

Also, whether a suit is groundless in law is a legal question, not a fact question. *See Donwerth v. Preston II Chrysler-Dodge, Inc.,* 775 S.W.2d 634, 637 (Tex. 1989); *Riddick v. Quail Harbor Condominium Ass'n, Inc.,* 7 S.W.3d 663, 677–78 (Tex.App.-Houston [14th Dist.] 1999, no pet.). As long as the trial court knows the factual bases for the suit, which for most

---

1. *TransAmerican* requires that sanctions be just, and Mosk relies heavily upon that decision for support. We note, however, that *TransAmerican* involved sanctions imposed for discovery abuse pursuant to Rule 215 of the Texas Rules of Civil Procedure. *TransAmerican,* 811 S.W.2d at 916. The case before us involves neither Rule 215 sanctions nor any similar "offensive conduct." *See id.* at 917.

part should be in the petition, it need not hold a factual hearing to determine why the lawyer included a particular legal claim. That question simply does not bear on whether the suit is based on a valid or arguably valid legal theory. So, certainly in the case of a novel theory of law, the court would need to hear argument from counsel, but it would not need to hold a factual hearing. Appellant's claim that he was entitled to a factual hearing is incorrect.[1]

Second, I want to address appellant's claim that the court should have ordered appellant's attorney, not appellant, to pay opposing counsel's fees; after all, the attorney, not appellant, drafted the pleadings. Once again, section 17.50(c) is written differently than the various rules imposing sanctions discussed. Section 17.50(c) does not state that the attorneys' fees can be imposed against either the party or the lawyer. *See* TEX. BUS. & COM.CODE § 17.50(c). But other statutes and rules allowing costs and fees to be imposed against lawyers clearly do. One part of Rule 13 refers to "attorneys or parties"; another part provides, "If a pleading, motion, or other paper is signed in violation of this rule, the court after notice and hearing . . . shall impose an appropriate sanction upon the person who signed it, a represented party, or both." TEX.R. CIV. P. 13. Likewise, section 10.004(a) of the Civil Practice and Remedies Code, which appellant also cites, refers to both the party and the lawyer: "A court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both." TEX. CIV. PRAC. & REM.CODE § 10.004(a). And, in the same manner, Rule 215.2(b) refers to both the party and the lawyer. TEX.R. CIV. P. 215.2(b)(2)(8). Section 17.50(c) does not refer to a "person or party" or "both," as these other sanctions provisions do. It says the following:

> On a finding by the court that an action under this section was groundless in fact or law . . ., the court shall award to the defendant reasonable and necessary attorneys' fees and court costs.

TEX. BUS. & COM.CODE § 17.50(c).

The clear language of Rules 13 and 215.2(b) and section 10.004 is missing from section 17.50(c). For these reasons, *TransAmerican* and its progeny do not control this case and the court was not free under section 17.50(c) to impose sanctions against the attorney.[2]

---

1. A factual hearing probably would have been necessary if the court had found that the suit was groundless in fact or brought in bad faith or for the purpose of harassment. Here, though, the court found that the suit was groundless in law, and he had before him documents which clearly showed how appellant acquired the property; he did not need to have a factual hearing.

2. Part of appellant's argument in this point is that the trial court had the authority to impose sanctions against the lawyer pursuant to section 10.004 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE § 10.004(a) (providing court may impose sanctions on the party, the lawyer, or both). The trial court had the authority to enter these sanctions on its own initiative, *see id.* § 10.002(b), but the record reveals no evidence that the court did so. Further, the trial court did not issue an order directing appellant to explain his conduct, which the court would have been required to do when entering sanctions on its own initiative. *See id.*