Affirmed and Majority and Concurring Opinions filed December 4, 2003









Affirmed and Majority and Concurring Opinions filed
December 4, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01130-CV

____________

 

MILTON STANFORD MOSK, III, Appellant

 

V.

 

CHERYL WARREN THOMAS f/k/a
CHERYL WARREN MOSK, Appellee

 



 

On Appeal from the 400th
District Court

Fort Bend County, Texas

Trial Court Cause No. 114,652

 



 

M A J O R I T Y   O P
I N I O N

Milton Mosk, III (AMosk@) appeals from a judgment
ordering him to pay $17,500 in attorney fees for bringing a frivolous suit
under section 17.50(c) of the Texas Deceptive Trade Practices Act (DTPA).  Characterizing the award of attorney fees as
a sanction, Mosk claims (1) the evidence is legally
and factually insufficient to support the sanction, (2) the trial court abused
its discretion in imposing the sanction, (3) the sanction violates his
constitutional right of due process, and (4) the trial court committed
reversible error by abusing its discretion. 
We affirm.








Milton Mosk and Cheryl Thomas
(formerly Cheryl Mosk) were first married on November
9, 1992.  The marriage was terminated by
divorce in November 1997.  As part of the
property settlement agreement, Mosk gave Thomas a
promissory note in the amount of $37,200.

Mosk and Thomas were remarried in February 1999.  Thomas sold her residence and the couple
purchased a house in Sugar Land located at 31 Pembroke.  The second marriage also ended in divorce on
March 23, 2000.  The property division in
the second divorce was facilitated by a mediated property settlement
agreement.  Under the terms of the Rule
11 agreement, Mosk was to get the Pembroke
property.  To assure recovery of her half
of the marital estate, the parties agreed that Thomas would take a promissory
note for $47,500.  The pertinent
handwritten provisions of the agreement are as follows:

g.  Agreements regarding property (division of
community estate, confirmation of separate property and allocation of
debts):  Î House to H;  W to vacate by 4/15/00.  H to be responsible for mortgage & SW
note.  Ï H to execute a real property lien
note in principal amount of $47,500Cwith
payments to commence October 1, 2000C$800/month
($400 on 1st & $400 on the 15th of each month).  This note will replace the promissory note in
the original amount of $37,200 executed by H on 11/18/97 & which note will
be considered null & void no interest shall accrue unless note becomes delinquent,
then interest at rate of 10% per annum.

Pursuant
to the Rule 11 agreement, Thomas executed a special warranty deed conveying her
interest in the Pembroke property to Mosk.  Mosk, in turn,
executed a real property lien note in the amount of $47,500.  The real property lien note, however,
contained the following proviso that was not in the handwritten Rule 11
agreement:








In the event the property
securing this Note is sold or transferred, Payee [Thomas] shall release any
lien created by this note upon written demand by the Grantor [Mosk] herein. 
Grantor shall replace the collateral with a lien of equal stature on
replacement property acquired by him.

The
real property lien note was secured by a third lien deed of trust containing
similar terms regarding the sale of the property:

11.  If all or any part of the Property is sold or
transferred, Beneficiary [Thomas] agrees that Grantor [Mosk]
will be entitled to a release of the lien created herein upon written demand by
Grantor.  Further, in the event that all
or any part of the above described property is sold or transferred, Grantor
shall replace the collateral with a lien of equal stature to the lien herein
created on a replacement Property acquired by Grantor.  In the event Beneficiary fails to tender the
required release within five (5) business days of demand therefore, Beneficiary
grants to Grantor a power of attorney coupled with an interest to execute said
release.

Although both the real property lien note and the third lien
deed of trust purport to bind Thomas, the documents were executed solely by Mosk.

Thereafter,
Mosk married Denise Jucker
in June 2000, and he moved out of the Pembroke property.  Mosk put the
property up for sale, and shortly thereafter, Samy Rehem agreed to buy the property for $285,000.  Mosk executed a
sales agreement with Rehem in which both parties
agreed to close on the sale by July 11, 2000. 
On June 19, 2000, Mosk=s attorney sent a letter to
Thomas=s attorney making the following
demand:

Pursuant
to the terms of paragraph 11 of the above referenced document [third lien deed
of trust], please be advised that Milton Mosk has an
Earnest Money Contract for the sale of the above described real property.  Mr. Mosk is
prepared to replace the lien granted upon the referenced real property with a
first and superior security interest in and to his 1995 Toyota 4 door
automobile.  All things considered, a
security interest in the Toyota probably constitutes a superior lien position
than that created by the Third Lien Deed of Trust.  As you are aware, Ms. Mosk
[Thomas] has 5 days to tender a release of the Third Lien Deed of Trust
document.








Thomas
refused to tender a release of her lien. 
Thus, on June 27, 2000, Mosk=s attorney sent another letter
directly to Thomas in which he threatened to sue her if she did not execute a
release:

Your
refusal to release the subject real property from operation of the Lien is
clearly a breach of your contract with my client.  In addition, since my client is a consumer as
that term is defined by the Texas Business and Commerce Code, your actions
probably constitute a violation of the Texas Deceptive Trade Practices
Act.  Since the transaction in question
involves the acquisition of real property, your actions further constitute a
violation of Article 27.01 (Fraud in a Real Estate Transaction) of the Texas
Business and Commerce Code.  I bring
these matters to your attention because I am recommending to my client that he
file a civil lawsuit against you for the recovery of his damages.  In addition, as you may be aware, both the
Texas Deceptive Trade Practices Act and Fraud statute allow for recovery of
exemplary damages and attorney=s fees by a successful
Plaintiff.

The threats proved unsuccessful and Thomas refused to
release her deed of trust.  Mosk could not, therefore, complete the sale of the
Pembroke property.  On July 28, 2000, Rehem=s attorney sent a demand letter
to Mosk seeking recovery of $3,198.01 in damages
stemming from Mosk=s breach of the sales
agreement.  When Mosk
refused to pay, Rehem sued to recover his damages.

Mosk, in turn, sued Thomas for
breach of contract, fraud in a real estate transaction, indemnification for claims
asserted against him by Rehem, DTPA violations, and a
declaratory judgment.  Mosk also sought punitive damages of at least $250,000.

Thomas responded with a general denial and a counterclaim
for common law fraud, fraudulent misrepresentation, intentional infliction of
emotional distress, breach of contract, and violations of the DTPA.

To facilitate a resolution of all the claims, Rehem=s suit against Mosk was consolidated with Mosk=s suit against Thomas and her
counterclaims against Mosk.








Both Thomas and Mosk filed motions
for summary judgment.  The trial court
granted Mosk an interlocutory summary judgment on all
of Thomas=s claims except her DTPA cause
of action.  Thomas=s motion for summary judgment
was denied.  Accordingly, the trial court
ordered that Thomas take nothing as to all of her claims save her DTPA cause of
action.  Thereafter, the parties
proceeded to trial before the court. 
After considering the evidence adduced by the parties, the trial court
rendered a final judgment in which it ordered that Mosk
take nothing on his claims against Thomas, that Thomas recover attorney fees
from Mosk in the amount of $17,500, and that Rehem recover from Mosk $5,554.21
in damages and attorney fees.

In
his first and second issues for review, Mosk contends
the evidence is legally and factually insufficient to support Aan award of sanctions,@ i.e., Thomas=s attorney fees.  The attorney fees at issue were awarded to
Thomas under the authority of section 17.50(c) of the DTPA.  The statute provides, as follows:

c)  On a finding by the court that an action
under this section was groundless in fact or law or brought in bad faith, or
brought for the purpose of harassment, the court shall award to the defendant
reasonable and necessary attorneys= fees and court costs.

Tex. Bus. & Com. Code Ann. ' 17.50(c) (Vernon 2002).  Notwithstanding the fact the trial court
awarded attorney fees to Thomas under the DTPA, Mosk
supports his contention by citing a number of decisions regarding the
imposition of sanctions under Rule 13.  See
Tex. R. Civ.
P. 13.








The Texas Supreme Court has held the term Agroundless@ has the same meaning in the
DTPA and Rule 13, i.e., A[n]o basis in law or fact and
not warranted by good faith argument for the extension, modification, or
reversal of existing law.@  Donwerth
v. Preston II Chrysler-Dodge, Inc., 775 S.W.2d 634, 637 (Tex. 1989).  Moreover, the same conduct may implicate both
section 17.50(c) and Rule 13, and some courts have categorized the award of
attorney fees under section 17.50(c) as a sanction.  See Hartman v. Urban, 946 S.W.2d 546,
551 (Tex. App.CCorpus Christi 1997, no writ); Davila
v. World Car Five Star, 75 S.W.3d 537 (Tex. App.CSan Antonio, no pet.); Bohls v. Oakes, 75 S.W.3d 473, 480 (Tex. App.CSan Antonio 2002, pet.
denied).  However, we do not deem the
award of attorney fees under the DTPA as punitive sanctions.  While a sanction may include the award of
attorney fees, restitution is not punishment; it is simply the restoration of a
loss caused by one=s own misfeasance or
malfeasance.  See Faulk & Mayfield
L.L.P. v. Molzan, 974 S.W.2d 821, 823 (Tex. App.CHouston [14th Dist.] 1998, pet.
denied).  Accordingly, we omit from our
analysis any reference to decisions, standards of review, or rationale
associated with the imposition of Rule 13 sanctions.

The trial court was authorized to award attorney fees to Thomas
under the theory that Mosk=s suit was Agroundless.@  Tex.
Bus. & Com. Code Ann. ' 17.50(c).  The standard for determining whether a suit
is groundless considers Awhether the totality of the
tendered evidence demonstrates an arguable basis in fact and law for the
consumer=s claim.@  Selig v.
BMW of N. Am., Inc., 832 S.W.2d 95, 103B04 (Tex. App.CHouston [14th Dist.] 1992, no
writ) (quoting Spettstosser v. Myer,
779 S.W.2d 806, 808 (Tex. 1989)). 
Moreover, here the trial court was authorized to award attorney fees if Mosk=s suit was groundless either in
law or fact; whether a suit is groundless in law is a legal
question.  See Donwerth,
775 S.W.2d at 637; Riddick v. Quail Harbor Condominiums Ass=n, Inc., 7 S.W.3d 663, 677B78 (Tex. App.CHouston [14th Dist.] 1999, no
pet.).  Thus, while Mosk
raises issues regarding sufficiency of the evidence, our review of a trial
court=s determination to award
attorney fees under section 17.50(c) is a question of law under an abuse of
discretion standard.  Riddick, 7
S.W.3d at 678; Selig, 832 S.W.2d at 103B04.








Under an abuse of discretion standard, legal and factual
insufficiency are not independent grounds for asserting error, but are relevant
factors in assessing whether the trial court abused its discretion.  Gray v. Gray, 971 S.W.2d 212, 213
(Tex. App.CBeaumont 1998, no pet.).  A trial court abuses its discretion when it
acts in an arbitrary or unreasonable manner, or when it acts without reference
to any guiding rules or principles.  Beaumont
Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex.
1991); Worford v. Stamper, 801 S.W.2d
108, 109 (Tex. 1990).  The mere fact that
a trial judge may decide a matter within his discretionary authority in a
different manner than an appellate justice in a similar circumstance does not
demonstrate that an abuse of discretion occurred.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241B42 (Tex. 1985).  An abuse of discretion does not occur when
the trial court bases its decisions on conflicting evidence.  Davis v. Huey, 571 S.W.2d 859, 862
(Tex. 1978); Gray, 971 S.W.2d at 214; Valdez v. Valdez, 930
S.W.2d 725, 731 (Tex. App.CHouston [1st Dist.] 1996, no
writ.).  Furthermore, an abuse of
discretion does not occur as long as some evidence of a substantive and
probative character exists to support the trial court=s decision.  Holley v. Holley, 864 S.W.2d 703, 706
(Tex. App.CHouston [1st Dist.] 1993, writ
denied).

The evidence establishes that Mosk=s suit was groundless in
law.  Mosk was
not entitled to bring a DTPA suit because he was not a Aconsumer@ as that term is defined by the
act.  A Aconsumer@ is defined under the act as Aan individual . . . who seeks
or acquires by purchase or lease, any goods or services.@  Tex.
Bus. & Com. Code Ann. ' 17.45(4) (Vernon 2002).  Whether a plaintiff is a consumer under the
DTPA is a question of law to be determined by the trial court from the
evidence.  Ford v. City State Bank of
Palacios, 44 S.W.3d 121, 133 (Tex. App.CCorpus Christi 2001, no
pet.).  Here, Mosk=s own pleadings admit that he
acquired the Pembroke property not by purchase or lease, but by virtue of a
property settlement in a divorce proceeding. 
Therefore, Mosk was not a Aconsumer@ and was not authorized to
bring a DTPA suit.  See Transport Ins.
Co. v. Faircloth, 898 S.W.2d 269, 273B74 (Tex. 1995).  By finding this suit Afrivolous,@ the trial court did not abuse
its discretion in granting attorney fees to Thomas.  Accordingly, Mosk=s first and second issues for
review are overruled.








In his third issue, Mosk contends
the trial court abused its discretion in ordering Asanctions.@  For reasons we have already set forth above,
the trial court did not abuse its discretion in awarding attorney fees to
Thomas.  However, here Mosk specifically complains that the trial court should
have assessed Thomas=s attorney fees not against him
personally, but against his attorney who filed the frivolous suit.  Mosk cites no
direct authority in support of his position, and we have found none.  Section 17.50(c) sets out a mechanism for a
defendant to recover his or her attorney fees. 
Moreover, it is well established that attorney fees can be assessed
against a party in a DTPA action.  See,
for example, Selig, 832 S.W.2d at 104; Maronge v. Cityfed
Mortgage Co., 803 S.W.2d 393, 396 (Tex. App.CHouston [14th Dist.] 1991, no
writ).  Accordingly, we find the trial
court did not abuse its discretion in ordering Mosk
to pay Thomas=s attorney fees.  Mosk=s third issue is overruled.

  In his fourth issue,
Mosk claims the Asanctions@ violate his due process rights
because he is being punished for his attorney=s culpability.  However, as we have already stated, we do not
construe the award of attorney fees as a punitive sanction requiring review
under the standards set forth in TransAmerican
Natural Gas Corp. v. Powell, 811 S.W.2d 913, 917 (Tex. 1991).[1]  Accordingly, Mosk=s discussion of Apunishment@ and Aculpability@ is misplaced.  Mosk=s fourth issue is overruled.

In his fifth issue, Mosk contends
the errors previously alleged by him constitute reversible error because they
were harmful to him.  However, we have
found no error in the trial court=s award of attorney fees.  Accordingly, Mosk=s fifth issue is overruled.

The judgment of the trial court is affirmed.

 

_____________________________

J. Harvey Hudson

Justice

 

Judgment
rendered and Majority and Concurring Opinions filed December 4, 2003.

Panel
consists of Justices Yates, Hudson, and Fowler.











[1]  TransAmerican requires that sanctions be just, and Mosk relies heavily upon that decision for support.  We note, however, that TransAmerican
involved sanctions imposed for discovery abuse pursuant to Rule 215 of the
Texas Rules of Civil Procedure.  TransAmerican, 811 S.W.2d at 916.  The case before us involves neither Rule 215
sanctions nor any similar Aoffensive conduct.@  See id. at 917.